UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Doctors for America,<br><br>    Plaintiff,<br><br>    v.<br><br>Office of Personnel Management, et al.,<br><br>    Defendants. | Civil Action No. 25-cv-322 |

**DECLARATION OF DR. RESHMA RAMACHANDRAN**

I, Reshma Ramachandran, declare as follows:

1. I am a board-certified family physician, health services researcher, and Assistant Professor at Yale School of Medicine. I see patients in a primary care practice and co-direct an interdisciplinary research and policy program focused on medical product evaluation, approval, and coverage toward advancing policies that improve patient health and health care. I also lead several research projects using publicly available datasets to examine the impact of sociodemographic factors on health outcomes. I received my M.D. from the Alpert Medical School at Brown University and an M.P.P. at the Harvard Kennedy School of Government. I completed my family medicine residency at Kaiser Permanente Los Angeles Medical Center and health services research and policy fellowship at the National Clinician Scholars Program at Yale University.

2. I am a member and member of the board of directors of Doctors for America (DFA). DFA is a nonpartisan, not-for-profit, 501(c)(3) organization of over 27,000 physicians and medical trainees including medical residents and students in all 50 states, representing all medical

1

specialties. DFA mobilizes doctors, other health professionals, and medical trainees to be leaders who put patients over politics to improve the health of patients, communities, and the nation. DFA equips physicians and medical trainees with skills and resources to advocate for health care issues at the local, state, and federal level. Members that comprise DFA include clinicians who provide direct care to patients, those who provide education to other clinicians and trainees, and those who conduct clinical and public health research.

3. DFA's work focuses on access to affordable care, community health and prevention, and health justice and equity. We advocate at the national and state levels for comprehensive health system reform, expansion of health insurance coverage, and improvements to health care delivery so that it better meets our patients' needs. We also advocate on a diverse array of issues that affect our communities, including firearm violence, substance use disorder, homelessness, nutrition, and infrastructure funding, and we work to make our health care system more just and equitable for all, acting to erase inequities based on race, ethnicity, sex, gender, sexuality, age, immigration status, and more.

4. DFA members and other health care professionals rely on webpages and datasets on the websites of the Centers for Disease Control (CDC) and Food and Drug Administration (FDA) to do our work. After the Office of Personnel and Management (OPM) issued its memorandum entitled "Initial Guidance Regarding President Trump's Executive Order *Defending Women*" on January 29, 2025, CDC and FDA removed from their websites numerous webpages and datasets that served as resources for DFA members. The removal of these webpages makes it harder for DFA members to do our clinical, research, and advocacy work.

5. I visited the following webpages on the CDC and FDA websites at approximately 10:00 am on February 6, 2025, and found they were no longer operative:

a. Webpages for data from "The Youth Risk Behavioral Surveillance System." The homepage for the Youth Risk Behavioral Surveillance System is intact and is located at https:/www.cdc.gov/yrbs, but webpages through which researchers could access various Youth Risk Behavioral Surveillance Survey results have been removed. For example, the webpage for "High School YRBS" that provides "United States 2021 Results" has been removed from its address at https://nccd.cdc.gov/Youthonline/App/Results.aspx?TT=A&OUT=0&SID=HS&QID=QQ&LID=XX&YID=2021&LID2=&YID2=&COL=S&ROW1=N&ROW2=N&HT=QQ&LCT=LL&FS=S1&FR=R1&FG=G1&FA=A1&FI=I1&FP=P1&FSL=S1&FRL=R1&FGL=G1&FAL=A1&FIL=I1&FPL=P1&PV=&TST=False&C1=&C2=&QP=G&DP=1&VA=CI&CS=Y&SYID=&EYID=&SC=DEFAULT&SO=ASC. The webpage for "YRBSS Results" contains links to other datasets that have been removed. *See* https://www.cdc.gov/yrbs/results/index.html.

b. Webpages on "Data and Statistics" for "Adolescent and School Health," which have been removed from their addresses beginning at https://www.cdc.gov/healthy-youth/data-statistics/index.html.

c. Webpages for "The Social Vulnerability Index," which have been removed from their addresses beginning at https:/atsdr.cdc.gov/place-health/php/svi/index.html.

d. Webpages for "The Environmental Justice Index," which have been removed from their addresses beginning at https:/www.atsdr.cdc.gov/place-health/php/eji/index.html.

e. A report on "PrEP for the Prevention of HIV Infection in the U.S.: 2021 Guideline Summary," which has been removed from its address at

3

      https://www.cdc.gov/hivnexus/media/pdfs/2024/04/cdc-hiv-together-brochure-prepguidelineupdate2021-provider.pdf.

f. Webpages for "HIV Monitoring," which have been removed from their addresses beginning at https://www.cdc.gov/hiv-data/. Among the HIV Monitoring pages that CDC removed are those about the National HIV Behavioral Surveillance program, the front page for which has been removed from https://www.cdc.gov/hiv-data/nhss/index.html.

g. A webpage on "Getting Tested for HIV," which has been removed from its address at https://www.cdc.gov/hiv/testing/index.html.

h. Webpages on "National ART Surveillance System (NASS)," which have been removed from their addresses beginning at https://artreporting.cdc.gov/Default.aspx.

i. A webpage for "CDC Contraceptive Guidance for Health Care Providers," which has been removed from its address beginning at https://www.cdc.gov/contraception/hcp/contraceptive-guidance/index.html.

j. A webpage on "Study of Sex Differences in the Clinical Evaluation of Medical Products," which has been removed from its address beginning at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/study-sex-differences-clinical-evaluation-medical-products.

k. A webpage on "Diversity Action Plans to Improve Enrollment of Participants from Underrepresented Populations in Clinical Studies," which has been removed from its address beginning at https://www.fda.gov/regulatory-information/search-

fda-guidance-documents/diversity-action-plans-improve-enrollment-participants-underrepresented-populations-clinical-studies.

6. I rely on several of the removed webpages and datasets in my clinical and research work. For example, CDC has removed webpages for the Social Vulnerability Index, which utilizes data from the U.S. Census Bureau to identify communities at various geographic levels that would be especially vulnerable to disease outbreaks and natural disasters. The index also provides a holistic metric of various structural determinants of health to inform policies that allow for equitable allocation of resources. Before these webpages were taken down, other DFA members and I regularly relied on them to analyze connections between sociodemographic factors and health outcomes. For instance, I am currently using the Social Vulnerability Index in research projects targeted at better understanding trends of where new community health centers emerge and where clinical trials for specific disease areas are located. Without access to the Social Vulnerability Index, I must seek out other datasets that contain an alternative metric or other variables that reflect the social vulnerability of areas by county, zip code, and census tract. Because the Social Vulnerability Index is uniquely useful and updated frequently using data collected by the federal government, other datasets are unlikely to provide as useful of insights into the effects of sociodemographic factors on that status of a particular location. The absence of the Social Vulnerability Index data will ultimately harm the state of scientific knowledge and hinder the adoption of urgently needed policies to ensure efficient and equitable allocation of resources to areas of greatest need.

7. CDC has also removed from its website the webpage for "Contraceptive Guidance for Health Care Providers," which provided a landing page for various clinical recommendations and tools available for clinicians to provide high-quality reproductive health care. Like several of

my colleagues within Doctors for America, I take care of female patients of reproductive age, many of whom have other medical conditions making it imperative to select the appropriate contraceptive that would not interfere with their existing co-morbidities and other medications. Although the lengthier report from the CDC regarding medical eligibility criteria for contraceptive use is still available, the lack of this landing page as well as linked pages including the "U.S. MEC and SPR Provider Tools" makes it more difficult and time-consuming to provide updated recommendations and prescribe appropriate options to patients. For example, links to the "Summary Chart of U.S Medical Eligibility Criteria for Contraceptive Use" and to download the application "Contraception" that are designed for easy use in the clinical setting are no longer available. Other provider guides from the removed "U.S. MEC and SPR Provider Tools" page are also no longer available, including guides on "When to Start Contraceptive Methods and Routine Follow-Up," "What to Do If Late, Missed, or Delayed Combined Hormonal Contraception," "What to Do If Late or Missed Progestin-Only Pills," and "Management of Bleeding Irregularities While Using Contraception and Management of IUDs When Pelvic Inflammatory Disease (PID) Is Found." The lack of these updated guides tailored to clinicians means that my colleagues and I will have to rely on alternative sources of information for managing such patients. Other sources might not be as up-to-date or as comprehensive as the guides, and reviewing those sources will take up a larger portion of a typical 20 minute visit with patients, leaving less time to discuss patients' other concerns during the visit and potentially causing delays to patients' access to appropriate contraception.

       8.      In addition, CDC has also removed the webpage that hosted the document entitled "PrEP for the Prevention of HIV Infection in the U.S.," which detailed in a clinician-friendly format considerations for administering various options of PrEP treatment to different patient

6

populations. The document also included information about what laboratory testing is needed ahead of initiating PrEP treatment as well as what is needed for ongoing assessment of patients if they are on oral or injectable PrEP medications. The lack of this information, written specifically for clinicians, means that I and other DFA members will now, in our clinical practice, have to identify other sources of information that might not be as physician-friendly, might be focused on specific populations rather than providing consideration for prescribing across multiple different populations, and might be from a non-independent source, raising questions as to whether reliance on the documents will lead to bias in our prescribing behavior.

9. FDA has removed from its website webpages for critical guidance documents including the "Study of Sex Differences in Clinical Evaluation of Medical Products" and "Diversity Action Plans to Improve Enrollment of Participants from Underrepresented Populations in Clinical Studies." These documents provide recommendations for the parameters by which sponsors of clinical trials for medical products should collect data across different demographic subpopulations to ensure that these products are tested in representative populations of patients who would be prescribed the treatments once authorized by the FDA. A core area of my work is in evaluating the evidence underlying FDA approval of medical products to see whether sponsors are indeed following the recommendations and requirements outlined by the FDA within guidance documents. We also examine whether FDA provides greater regulatory flexibility to some sponsors—that is, allowing for sponsors to not be subject to certain requirements or recommendations in their clinical trials of novel medical products. The removed webpages provide me and other regulatory researchers within DFA with important information to shape our studies and determine whether there may be opportunities for policy change. Not being able to access this

information on the FDA's website, where I have accessed it in the past, makes my research more difficult.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 6, 2025

*R. Ramachandran*

_____
Reshma Ramachandran