# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Doctors for America,<br><br>Plaintiff,<br><br>v.<br><br>Office of Personnel Management, et al.,<br><br>Defendants. | Civil Action No. 25-cv-322 |

**DECLARATION OF DR. SUSAN PHILIP**

I, Susan Philip, declare as follows:

1. I am a board-certified physician, the Health Officer for the City and County of San Francisco, and Director of the Population Health Division of the San Francisco Department of Public Health (SFDPH). I have worked for SFDPH since 2005 and previously served as a Deputy Health Officer and the Director of the Disease Control and Prevention branch in the Population Health Division. In that role, I oversaw population level clinical, biomedical, and disease intervention efforts to reduce communicable and chronic diseases in San Francisco.

2. I received my M.D. from Washington University in St. Louis and trained as a resident in Internal Medicine at the University of Chicago. I also have an MPH from the Harvard School of Public Health, after which I completed a fellowship in Infectious Diseases at the University of California, San Francisco (UCSF). I am an Assistant Clinical Professor of Medicine in the Division of Infectious Diseases at UCSF, and have previously been an HIV primary care provider at San Francisco City Clinic.

1

3. As the City's Health Officer, I am charged under California law with taking any preventative measure that may be necessary to protect and preserve the public health from any public health hazard during a 'state of war emergency,' 'state of emergency,' or 'local emergency.' For example, I am responsible for declaring a local health emergency when there is a local health hazard, including whenever there is an imminent and proximate threat of the introduction of any contagious, infectious, or communicable disease; overseeing sampling, analyzing, or otherwise determining the identifying and other technical information relating to the health emergency or local health emergency as necessary to respond to or abate the local health emergency and protect the public health; issuing isolation orders; and taking measures deemed necessary to prevent the spread of a contagious, infectious, or communicable disease, even where there is no local state of emergency. I am also responsible for issuing orders to other governmental entities within my jurisdiction to take any action that I deem necessary to control the spread of the communicable disease.

4. I understand that over the past week or so, the CDC, HHS, and FDA all suddenly began removing data, guidance, and other information from their websites, such as interim clinical considerations for MPox; Youth Risk Behavior Surveillance System (YRBSS); Morbidity and Mortality Weekly Report (MMWR) Series; Health Alert Network (HAN) advisories; and Division of Adolescent and School Health (DASH) Data & Statistics.

5. It appears that CDC advisories, guidance documents, and datasets are being taken down erratically, unpredictably, and with little or no notice. It is not immediately clear what data on government websites has been altered and what has not. Some pages that were taken down are back up; others are still missing; and still others are back in altered form, either with whole

categories of data deleted, language changed, or hyperlinks deleted or inoperable. Indeed, as of February 7, 2025, the landing page for CDC.gov indicates the entire website is potentially being altered: "CDC's website is being modified to comply with President Trump's Executive Orders."

6. In my professional opinion, this removal and alternation of public information has unfortunately already cast doubt on the integrity of data on applicable government websites on which my department—and the public—relies, including legal requirements like health orders. Such an absence of information or lack of confidence in data that is available can have immediate and serious public health consequences.

7. For example, we have heard news reports that this past week, both a stray cat and a backyard poultry flock in San Mateo County—which borders San Francisco—were found to be carrying H5N1 (bird flu). If for some reason there was new information of how H5N1 spread (*e.g.*, from domestic pet to person, or from person to person) and we did not know, that could allow for transmission of the disease to spread among people—something that has greatly concerned the public health community, but which we understand has not yet happened. I learned from a colleague that as of February 7, 2025, CDC has not published the sequence for an H5N1 case they confirmed on January 24, 2025, which I understand is an unusual delay. I have grave professional concerns about CDC's failure to maintain and upload accurate data at an appropriate pace.

8. Public health concerns extend beyond diseases that we are already closely monitoring in and around San Francisco. During the last few weeks, we have received no information on the recent Marburg outbreak in Tanzania and Ebola outbreak in Uganda, including about anyone who may be returning to the U.S. who has been exposed to these viral hemorrhagic fevers. With the status of USAID in question and efforts underway to reduce its activity, there is

3

limited ability to help control these outbreaks, which pose even greater risks to U.S. health security given the lack of real-time information about disease outbreaks and transmission.

9. This is an area where local public health departments like SFDPH cannot substitute for the expertise and reach of a national agency like CDC, which has a global view of emerging infectious diseases in other parts of the world. Here, we especially rely on CDC, and the lack of information is especially harmful to San Francisco's public health, given the significant volume of international travelers who come to San Francisco, an international gateway.

10. Beyond these broad public health concerns, the specific data being targeted for permanent removal by the federal government targets some of San Francisco's most vulnerable populations and puts them at an increased risk of harm—including the preventable spread of disease that could extend beyond just these populations. For example, with Mpox, there could be an epidemiological link to a new route of transmission or a new variant of Mpox that could be circulating in San Francisco that requires a new type of treatment, or is not responsive to current treatments. In such circumstances, it would impair our ability to communicate information, guidance, and interventions to the entire clinical community in San Francisco.

11. In addition to preventing the spread of diseases, accurate and timely data is critical to effective treatment. The broader clinical community in San Francisco relies on CDC information about treatment of STIs in particular—the CDC clinical treatment guidelines are the gold standard. With the current removal of STI information from public databases, a mistake can be made in the treatment of STIs. Incorrect treatment of STIs can lead to severe complications, such as late-stage syphilis, mother-to-child transmission of syphilis, and neurosyphilis.

4

12. The removal of data also undermines scholarship based on that data as well as any conclusions public health researchers can draw about emerging public health concerns and trends. Public health research and scholarship is always additive, and we rely on building off of precedential data, so removal destabilizes our ability to continue to build towards better public health. San Francisco has active public health researchers who do public health projects with direct public health applications to the health of San Franciscans, such as HIV prevention strategies and working to find new ways to support individuals out of drug use.

13. Local health departments like San Francisco also rely on accurate, updated, and complete CDC data to help operationalize on-the-ground treatment and interventions.

14. We cannot determine precisely which content has been deleted or altered. This has left our Department with uncertainty about which data we can rely on. This concern extends to information and datasets that remain housed on agency websites, because although it may well turn out such data *hasn't* been changed, our department will have to spend valuable time ascertaining whether or not it has been.

15. My understanding is that, even where some datasets may have been downloaded and provided by third parties elsewhere, this is not happening in any systematic way, such that there is no guarantee that any given dataset will still be available. Even where the data might have been downloaded and posted elsewhere, it takes significant time to identify where else it might be, secure access to it, and adapt to a different interface. This introduces uncertainty, and I would hesitate to make public health policy decisions in San Francisco based on a third-party storage of data that may have inadvertently been altered.

16. In particular, I am concerned that some of the data taken down was contained within CDC AtlasPlus, which allows data to be sorted and analyzed by variables such as county, year, disease condition, and demographic profile. It appears AtlasPlus has since been put back online, but without the ability to, for example, evaluate data based on certain demographic variables. I am uncertain what other aspects of the dataset have been disabled or continue to be offline.

17. Although some previous versions of some CDC pages are available from online archives like Wayback Machine (web.archive.org), capturing particular websites is not a substitute for dynamic datasets like CDC AtlasPlus. In addition, it would still take a lot of time and skill to compare that data to what is available now, and, if it has been altered, to understand the ways it has been altered and how that affects the utility of the current data. There is also no guarantee that every page has been archived, or that the archived version was the most up-to-date version of that page. In any event, finding each archived page would be very time consuming, and any time spent doing so is time not spent doing our job protecting public health.

18. Not only is data being deleted, but agencies paused the publication of new volumes of long-time periodicals, such as the MMWR Journal. I am concerned that now that such publications have resumed, some information may be omitted. It is not only the absence of data but the completeness of the content distributed going forward.

19. When public health data is kept out of the public eye—or subject to change after the fact—it impacts both the public's capacity to understand and trust public health guidance and decision-making, and the ability of public health professionals to provide such guidance and make such decisions. Both parties utilize CDC data: the public is looking to see that the recommendations and guidance from their local public health departments are consistent with the

6

CDC, and the CDC is the point of reference for public health officials. Destabilizing reliance and trust on CDC information therefore affects the trust the public has in local public health departments like SFDPH.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 7, 2025, in San Francisco, California.

/s/ *Susan Philip*_____
Susan Philip, MD