UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Doctors for America,<br><br>                    Plaintiff,<br><br>         v.<br><br>Office of Personnel Management, *et al.*,<br><br>                    Defendants. | Case No. 1:25-cv-00322-JDB |

**Defendants' Memorandum in Opposition to
Plaintiff's Motion for a Temporary Restraining Order**

Brett A. Shumate
Acting Assistant Attorney General

Amanda N. Liskamm
Director

Lisa K. Hsiao
Senior Deputy Director, Civil Litigation

Hilary K. Perkins
Assistant Director

James W. Harlow
Senior Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, DC  20044-0386

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

BACKGROUND .............................................................................................................................. 1

LEGAL STANDARD ....................................................................................................................... 2

ARGUMENT .................................................................................................................................... 3

    I.    DFA has not clearly shown irreparable harm .............................................................. 3

    II.   DFA has not demonstrated a likelihood of success on the merits ........................... 6

       A.   DFA lacks standing ................................................................................................ 6

       B.   DFA's APA claims are unlikely to succeed ......................................................... 10

    III.  The balance of equities and public interest do not support emergency relief .. 12

CONCLUSION ............................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Ass'n of Admin. L. Judges v. U.S. OPM*,
   640 F. Supp. 2d 66 (D.D.C. 2009) .................................................................................. 11, 12

*Aviles-Wynkoop v. Neal*,
   978 F. Supp. 2d 15 (D.D.C. 2013) ............................................................................................ 5

*Bennett v. Spear*,
   520 U.S. 154 (1997) ................................................................................................................ 11

*Bradshaw v. Veneman*,
   338 F. Supp. 2d 139 (D.D.C. 2004) .......................................................................................... 5

*Cal. Ass'n of Priv. Postsecondary Sch. v. DeVos*,
   344 F. Supp. 3d 158 (D.D.C. 2018) .......................................................................................... 3

*Chaplaincy of Full Gospel Churches v. England*,
   454 F.3d 290 (D.C. Cir. 2006) ............................................................................................. 3, 6

*Cigar Ass'n of Am. v. U.S. FDA*,
   323 F.R.D. 54 (D.D.C. 2017) ................................................................................................... 9

*Citizens for Resp. & Ethics in Wash. v. FEC*,
   475 F.3d 337 (D.C. Cir. 2007) ................................................................................................. 9

*Cornish v. Dudas*,
   540 F. Supp. 2d 61 (D.D.C. 2008) ............................................................................................ 5

*Elec. Priv. Info. Ctr. v. Dep't of Just.*,
   15 F. Supp. 3d 32 (D.D.C. 2014) .............................................................................................. 5

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
   878 F.3d 371 (D.C. Cir. 2017) ........................................................................................ 6, 7, 10

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Just.*,
   928 F.3d 95 (D.C. Cir. 2019) .................................................................................................. 10

*FDA v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) .................................................................................................................. 9

*FEC v. Akins*,
   524 U.S. 11 (1998) .................................................................................................................... 7

*Free Speech for People v. FEC*,
   442 F. Supp. 3d 335 (D.D.C. 2020) .......................................................................................... 8

*Friends of Animals v. Jewell*,
   828 F.3d 989 (D.C. Cir. 2016) ............................................................................................. 7, 8

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) .................................................................................................................. 7

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
   460 F.3d 13 (D.C. Cir. 2006) .................................................................................... 10, 11

*Hall v. Johnson*,
   599 F. Supp. 2d 1 (D.D.C. 2009) ..................................................................................... 4

*Hanson v. Dist. of Columbia*,
   120 F.4th 223 (D.C. Cir. 2024) ....................................................................................... 3

*Hearst Radio, Inc. v. FCC*,
   167 F.2d 225 (D.C. Cir. 1948) ....................................................................................... 11

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .................................................................................................. 9, 10

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) ....................................................................................................... 11

*McCutcheon v. Fed. Election Comm'n*,
   496 F. Supp. 3d 318 (D.D.C. 2020) ................................................................................ 6

*Mexichem Specialty Resins, Inc. v. EPA*,
   787 F.3d 544 (D.C. Cir. 2015) ................................................................................ 3, 4, 5

*Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Def.*,
   990 F.3d 834 (4th Cir. 2021) .................................................................................... 11, 12

*New York v. Meta Platforms, Inc.*,
   66 F.4th 288 (D.C. Cir. 2023) ......................................................................................... 4

*Nguyen v. U.S. Dep't of Homeland Sec.*,
   460 F. Supp. 3d 27 (D.D.C. 2020) .................................................................................. 6

*Nken v. Holder*,
   556 U.S. 418 (2009) .................................................................................................. 3, 12

*Pub. Citizen Health Rsch. Grp. v. Acosta*,
   363 F. Supp. 3d 1 (D.D.C. 2018) .................................................................................... 5

*Sai v. Transp. Sec. Admin.*,
   54 F. Supp. 3d 5 (D.D.C. 2014) ...................................................................................... 5

*Scenic Am., Inc. v. U.S. Dep't of Transp.*,
   836 F.3d 42 (D.C. Cir. 2016) ......................................................................................... 10

*Sierra Club v. EPA*,
   754 F.3d 995 (D.C. Cir. 2014) ........................................................................................ 7

*Simon v. E. Ky. Welfare Rts. Org.*,
   426 U.S. 26 (1976) ......................................................................................................... 10

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ........................................................................................................ 7

*Sw. Airlines Co. v. U.S. Dep't of Transp.*,
  832 F.3d 270 (D.C. Cir. 2016) .................................................................................. 11

*Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*,
  259 F.2d 921 (D.C. Cir. 1958) .................................................................................... 4

*Wertheimer v. FEC*,
  268 F.3d 1070 (D.C. Cir. 2001) .................................................................................. 8

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ............................................................................................. 2, 3, 12

*Wis. Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985) .................................................................................... 3

**Statutes**

5 U.S.C. §
  551(13) ...................................................................................................................... 11
  702 ............................................................................................................................ 10
  704 ............................................................................................................................ 10

44 U.S.C. §
  3502(12) ..................................................................................................................... 8
  3506(d)(1) .................................................................................................................. 8

**Other Authorities**

Exec. Order No. 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025) ............................................ passim

## INTRODUCTION

Doctors for America (DFA), an association of healthcare providers, disagrees with the removal of some information from websites of the Centers for Disease Control and Prevention (CDC) and Food and Drug Administration (FDA). DFA asserts the removals were in reaction to a guidance memorandum from the Office of Personnel Management (OPM) to agency heads about implementing a recent executive order. And now, the group demands the Court issue a temporary restraining order for the webpages' immediate restoration.

However, DFA falls well short of the standard for such extraordinary relief. It has not clearly shown any of its members would suffer irreparable harm absent a temporary restraining order. Nor is it substantially likely to succeed on the merits. To the contrary, DFA has not established the jurisdictional prerequisite of standing or the threshold requirements for the Administrative Procedure Act (APA) claims it alleges. Each of these failures is a sufficient basis for the Court to deny this motion.

## BACKGROUND

On January 20, 2025, the President issued Executive Order 14168 titled, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government." Exec. Order No. 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025). The Executive Order states "[i]t is the policy of the United States to recognize two sexes, male and female." *Id.* § 2. It further directs federal agencies to take various steps to effectuate this policy and report to the President about those efforts. *See id.* §§ 3-5, 7.

On January 29, 2025, OPM's acting director sent a memorandum to all "[h]eads and [a]cting [h]eads of [d]epartments and [a]gencies." OPM, Memorandum With Initial Guidance Regarding President Trump's Executive Order *Defending Women* 1 (Jan. 29,

1

2025).¹ The memorandum contained "initial guidance" about steps "agency heads should take" to "end all agency programs that use taxpayer money to promote or reflect gender ideology as defined in Section 2(f)" of Executive Order 14168. *Id.*; *see* Exec. Order No. 14168, at §§ 2(f) and 3(e) (defining "gender ideology" and directing "[a]gencies" to "remove" and "cease issuing" statements or actions "that promote or otherwise inculcate gender ideology"). OPM stated that agency heads should take certain steps by January 31, 2025, and provide further information about "actions taken in response to this guidance and [Executive Order 14168]" by February 7, 2025. OPM Mem. 1-2.

On February 4, 2025, DFA filed this suit "to challenge (1) the action of [OPM] directing agencies to remove or modify webpages and datasets; and (2) the removal by CDC, FDA, and HHS of webpages and datasets." Compl., ECF No. 1, at ¶ 3. DFA alleges that, a few days prior, CDC, FDA, and HHS removed certain web content "[i]n response to OPM's memorandum," which had "served as resources to clinicians, researchers, and the general public." *Id.* ¶¶ 17-19. The Complaint asserts three APA claims: the first against OPM, the second against CDC and HHS, and the third against FDA and HHS. *See id.* ¶¶ 32-43.

On February 6, 2025, DFA moved for a temporary restraining order to require CDC, FDA, and HHS "to restore webpages and datasets" they removed and to enjoin those agencies "from removing or substantially modifying other webpages and datasets in implementation of the" OPM memorandum. TRO Mot., ECF No. 6, at 1. Defendants now oppose this motion.

### LEGAL STANDARD

A temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain such extraordinary relief, DFA

---

¹ https://perma.cc/59C3-TLMZ.

"must show: (1) '[it] is likely to succeed on the merits,' (2) '[it] is likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'the balance of equities tips in [its] favor,' and (4) issuing 'an injunction is in the public interest.'" *Hanson v. Dist. of Columbia*, 120 F.4th 223, 231 (D.C. Cir. 2024) (quoting *Winter*, 555 U.S. at 20). Because the defendants here are government entities, the balance of equities and the public interest factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

DFA is not entitled to a temporary restraining order. The group falls well short of clearly showing irreparable harm or a likelihood of success on the merits. Either failure provides a sufficient basis for denying extraordinary relief.

### I. DFA has not clearly shown irreparable harm

DFA must clearly "demonstrate that irreparable injury is *likely* in the absence of" a temporary restraining order, not merely "a possibility." *Winter*, 555 U.S. at 22 (emphasis in original). The D.C. Circuit "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). "Such injury must be both certain and great, actual and not theoretical, beyond remediation, and of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (internal quotations omitted). "Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam) (emphasis in original). Thus, DFA "must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Id.*

DFA "cannot establish irreparable injury" without "evidence that any specific [DFA] member" or the organization itself is injured. *Cal. Ass'n of Priv. Postsecondary Sch. v. DeVos*, 344 F. Supp. 3d 158, 178 (D.D.C. 2018). The only such evidence DFA proffers

3

are the declarations of two members, Drs. Liou and Ramachandran.² *See* TRO Mem., ECF No. 6-1, at 22-23 (quoting declarations). Absent the websites, Dr. Ramachandran says she "must seek out other datasets" and "alternative sources of information," which "might not be as physician-friendly." Ramachandran Decl., ECF No. 6-3, at ¶¶ 6-8. Dr. Liou "appreciated the quick and free access" to information on CDC websites. Liou Decl., ECF No. 6-4, at ¶ 10. But "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a" temporary restraining order, such as locating alternative sources of information, "are not enough" to show irreparable harm. *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958).

Indeed, DFA's own submissions show that much of this very information remains available through archival copies hosted by the Wayback Machine. *See* Compl. ¶ 18; TRO Mem. 6 n.5 ("[T]he contents of webpages available through the Wayback Machine constitute facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (quoting *New York v. Meta Platforms, Inc.*, 66 F.4th 288, 303 (D.C. Cir. 2023))). So, for example, if Dr. Liou needs a copy of the "CDC Contraceptive Guidance for Health Care Providers," it's only a click away. *Compare* Liou Decl. ¶ 8, *with* Compl. ¶ 18(i). Or if Dr. Ramachandran wants to review FDA's draft guidance, "Study of Sex Differences in the Clinical Evaluation of Medical Products," or CDC's report, "PrEP for the Prevention of HIV Infection in the U.S.," she need only bookmark the link in the Complaint. *Compare* Ramachandran Decl. ¶¶ 8-9, *with* Compl. ¶¶ 18(e), 19(a). The continued availability of this information belies any claim of "actual" injury. *Mexichem Specialty Resins*, 787 F.3d at 555.

---

² DFA subsequently filed two additional declarations and a press release from several medical associations. *See* ECF Nos. 8-1, 8-2, 8-3. But neither the declarants nor the other associations state that they are members of DFA. Thus, their statements have no bearing on "whether *the movant* would suffer irreparable injury." *Hall v. Johnson*, 599 F. Supp. 2d 1, 3 (D.D.C. 2009) (emphasis added).

4

Besides failing to show any asserted injury is "certain and great," DFA also has not demonstrated it is "of such imminence" to warrant a temporary restraining order. *Id.* After all, the "purpose of a temporary restraining order is to preserve the status quo and prevent imminent harm pending fuller briefing and a hearing on the request for injunctive relief." *Bradshaw v. Veneman*, 338 F. Supp. 2d 139, 141 (D.D.C. 2004). DFA submitted no "competent evidence into the record" showing that even a preliminary injunction would come too late. *Aviles-Wynkoop v. Neal*, 978 F. Supp. 2d 15, 21 (D.D.C. 2013) (quoting *Cornish v. Dudas,* 540 F. Supp. 2d 61, 65 (D.D.C. 2008)). For instance, neither Dr. Liou nor Dr. Ramachandran attests a particular patient will go untreated in the coming days or clinical research will come to a complete halt. *See Pub. Citizen Health Rsch. Grp. v. Acosta*, 363 F. Supp. 3d 1, 22 (D.D.C. 2018) (no irreparable harm where "*Plaintiffs* have not made any specific, non-speculative showing as to why they in particular have any exigent need for the data"); *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 46-47 (D.D.C. 2014) ("a movant's general interest in" using the information "is not sufficient to establish that irreparable harm will occur unless the movant receives immediate access to that information").

Lastly and relatedly, DFA fails to show that any member's injury is "beyond remediation" at the preliminary injunction or merits phases. *Mexichem Specialty Resins*, 787 F.3d at 555. In the Freedom of Information Act context, a plaintiff's ability "to obtain all responsive and non-exempt documents at the conclusion of the litigation" makes it "difficult for a plaintiff to demonstrate 'irreparable harm' that is in fact 'beyond remediation.'" *Sai v. Transp. Sec. Admin.*, 54 F. Supp. 3d 5, 10 (D.D.C. 2014). So too here. If DFA prevails at a later stage of this litigation, the Court could order restoration of the information, which "will ameliorate the harm." TRO Mem. 23. Without any suggestion that "the information . . . will no longer be of value" then, *Pub. Citizen*, 363 F. Supp. 3d at 23, DFA has not proven any harm to a member is truly irreparable.

DFA simply has not met the D.C. Circuit's "high standard for irreparable injury." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. This failure alone is "grounds for refusing to issue a" temporary restraining order. *Id.*

## II. DFA has not demonstrated a likelihood of success on the merits

DFA also is not entitled to a temporary restraining order because it has not demonstrated a likelihood of success on the merits. *See McCutcheon v. Fed. Election Comm'n*, 496 F. Supp. 3d 318, 330 (D.D.C. 2020) ("Because plaintiffs fail to show a likelihood of success on the merits on any of the counts raised in their complaint, they are not entitled to a preliminary injunction."). Specifically, DFA has not established the jurisdictional prerequisite of standing or the threshold requirements of an APA claim— "agency action" and "*final* agency action."[3] Any one of these failures also defeats this motion.

### A. DFA lacks standing

"A plaintiff unlikely to have standing is *ipso facto* unlikely to succeed" on the merits. *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 375 n.2 (D.C. Cir. 2017). So "[i]n the context of a temporary restraining order or preliminary injunction, courts 'require the plaintiff to show a substantial likelihood of standing under the heightened standard for evaluating a motion for summary judgment.'" *Nguyen v. U.S. Dep't of Homeland Sec.*, 460 F. Supp. 3d 27, 33 (D.D.C. 2020) (quoting *Elec. Priv. Info. Ctr.*, 878 F.3d at 377). Here, that means DFA "cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts that, if taken to be true, demonstrate a substantial likelihood of standing." *Id.*

Though DFA's brief does not analyze standing, it does reference harm to its members, which implicates the doctrine of associational standing. For associational

---

[3] Due only to the exigencies of time for this emergency briefing, Defendants do not address the substance of DFA's APA claims. Defendants, however, expressly do not concede the merits of those claims and will address them, as necessary, in later briefing.

6

standing, DFA must prove "(1) at least one of [its] members would have standing to sue; (2) the interests [DFA] seek[s] to protect are germane to [its] purposes; and (3) neither the claim asserted nor the relief requested requires the participation of individual members." *Sierra Club v. EPA*, 754 F.3d 995, 999 (D.C. Cir. 2014). DFA also must "identify [the] members who have suffered the requisite harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). The only identified members here are Drs. Liou and Ramachandran. Therefore, Drs. Liou and Ramachandran must show they "(1) suffered an 'injury in fact' that is 'concrete and particularized,' and 'actual or imminent, not conjectural or hypothetical,' (2) the injury is 'fairly traceable to the challenged action,' and (3) 'it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable [judicial] decision.'" *Sierra Club*, 754 F.3d at 999 (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). Neither member carries that burden.

"Because standing is not dispensed in gross but instead may differ claim by claim, we address seriatim [the doctors'] likelihood of standing on each" of the three APA claims. *Elec. Priv. Info. Ctr.*, 878 F.3d at 377 (internal quotations omitted). Taking Counts II and III first, these claims collectively challenge the removal of "webpages and datasets" by CDC and FDA. Compl. ¶¶ 37-43. Though not explicit, Drs. Liou and Ramachandran apparently assert a theory of informational injury. To do so, they must show they were (1) "deprived of information that, on [their] interpretation, a statute requires the government . . . to disclose to [them], and (2) [they] suffer[], by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016) (citing *FEC v. Akins*, 524 U.S. 11, 21-22 (1998)).

For starters, DFA identifies no statute that requires CDC and FDA to create or maintain the webpages, guidance documents, and other content mentioned by Drs. Liou and Ramachandran. Instead, DFA relies on a general instruction in the Paperwork

7

Reduction Act (PRA) that agencies "ensure that the public has timely and equitable access to the agency's public information." 44 U.S.C. § 3506(d)(1); *see* TRO Mem. 16. Yet it only contends the PRA applies to CDC's webpages covered by Count II, *see* TRO Mem. 16; Compl. ¶ 41, *not* to the FDA webpages in Count III. So DFA and Drs. Liou and Ramachandran necessarily cannot establish informational injury for Count III.

As to Count II, the PRA-based theory of informational injury does not survive scrutiny. The PRA defines "public information" as information an agency "discloses, disseminates, or makes available to the public." 44 U.S.C. § 3502(12). Once an agency chooses to make information available to the public, the PRA says, the agency must do so in a "timely and equitable" fashion. *Id.* § 3506(d)(1). Here though, CDC removed certain pages from its website. No longer meeting the PRA's definition of "public information," this information is no longer subject to 44 U.S.C. § 3506(d)(1). Because DFA cites nothing in the PRA that compels disclosure of information that an agency has not chosen to make public, Drs. Liou and Ramachandran "fail[] at the first part of the inquiry, the *sine qua non* of informational injury." *Friends of Animals*, 828 F.3d at 992.

Furthermore, "a plaintiff cannot establish injury based on the desire to obtain publicly available information 'from a different source.'" *Free Speech for People v. FEC*, 442 F. Supp. 3d 335, 343 (D.D.C. 2020) (quoting *Wertheimer v. FEC*, 268 F.3d 1070, 1075 (D.C. Cir. 2001)). As discussed above, the subject information from CDC and FDA remains available through archival copies on the Wayback Machine. Furthermore, alternative sources for this information indisputably exist. *See* Ramachandran Decl. ¶ 7 ("the lengthier report from the CDC regarding medical eligibility criteria is still available," "I will have to rely on alternative sources of information for managing such patients"); Liou Decl. ¶ 10 (admitting other "clinical resources" exist). The doctors just prefer not to search. *See* Liou Decl. ¶ 10; Ramachandran Decl. ¶¶ 7-8. But one's "desire" for information from a preferred government source and in a preferred format does not establish informational injury when the content is otherwise obtainable. *Free Speech for*

8

*People*, 442 F. Supp. 3d at 343; *see Citizens for Resp. & Ethics in Wash. v. FEC*, 475 F.3d 337, 340 (D.C. Cir. 2007) (no standing if the information sought "would add only a trifle to the store of information about the transaction already publicly available").

Also insufficient for standing is the time and effort Drs. Liou and Ramachandran may spend identifying alternative sources of information. The potential expenditure of time is not a "concrete and particularized" and "actual or imminent" injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); *see Cigar Ass'n of Am. v. U.S. FDA*, 323 F.R.D. 54, 65 (D.D.C. 2017) (allegation that agency action might "make it more difficult for [physicians] to counsel young people" was "neither particularized nor concrete" injury for standing).

Indeed, DFA advances a theory of "doctor standing," which the Supreme Court recently rejected. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 391 (2024). A doctor cannot challenge a generally applicable action by the government just because they "may need to spend more time treating . . . patients" as a result. *Id.* "The chain of causation is simply too attenuated" for standing. *Id.* at 391-92. Accordingly, Drs. Liou and Ramachandran have not demonstrated a substantial likelihood of standing to press Counts II and III.

They fare no better for Count I, which challenges the memorandum from OPM to other agency heads. *See* Compl. ¶¶ 15, 32-36. Addressed to the "Heads and Acting Heads of Departments and Agencies," the OPM memorandum provided "initial guidance to agencies regarding the President's Executive Order entitled *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*." OPM Mem. 1. Because Drs. Liou and Ramachandran are not themselves "the object of the" memorandum, their standing to challenge it is "substantially more difficult to establish." *Lujan*, 504 U.S. at 562. And the only injury they assert as a result of the OPM memorandum is the removal of information from CDC's and FDA's

9

websites, which, for the reasons discussed above, does not give rise to a cognizable injury.

Even assuming Drs. Liou and Ramachandran had established injury, they also must "adduce facts showing" that the OPM memorandum caused the claimed injury. *Id.* However, no "specific facts" in the doctors' declarations trace the removal of web content to OPM's memorandum rather than to the unchallenged Executive Order. *Elec. Priv. Info. Ctr.*, 878 F.3d at 377. Dr. Ramachandran simply presumes causation. *See* Ramachandran Decl. ¶ 4. Such "unadorned speculation will not suffice to invoke the federal judicial power." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 44 (1976).

Redressability also bars the way to standing. The OPM memorandum goes no further than the Executive Order about which it offers guidance. *Compare* OPM Mem. 1, *with* Exec. Order No. 14168, at §§ 2, 3(e), 7. Under DFA's own theory of the case, that Executive Order—unchallenged here—would independently require CDC and FDA to pull down the webpages at issue. Thus, Drs. Liou and Ramachandran have not "established that invalidating the [OPM memorandum] would" likely redress their injury. *Scenic Am., Inc. v. U.S. Dep't of Transp.*, 836 F.3d 42, 53 (D.C. Cir. 2016).

At bottom, DFA has not shown "for each of its claims, that at least one of its members has standing" to sue in their own right. *Elec. Priv. Info. Ctr. v. U.S. Dep't of Com.*, 928 F.3d 95, 101 (D.C. Cir. 2019). Therefore, DFA "is *ipso facto* unlikely to succeed" on the merits. *Elec. Priv. Info. Ctr.*, 878 F.3d at 375 n.2.

**B.   DFA's APA claims are unlikely to succeed**

Beyond the lack of standing, DFA's claims—all of which arise under the APA—are unlikely to succeed. Two "threshold questions" for every APA claim are "[w]hether there has been 'agency action'" and then "'final agency action' within the meaning" of 5 U.S.C. §§ 702 and 704. *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13,

18 (D.C. Cir. 2006). "[I]f these requirements are not met," the APA claim "is not reviewable." *Id.* DFA flunks both tests for every claim.

The APA "does not provide judicial review for everything done by an administrative agency." *Hearst Radio, Inc. v. FCC,* 167 F.2d 225, 227 (D.C. Cir. 1948). DFA "must identify some 'agency action'" within the meaning of 5 U.S.C. § 551(13). *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990). Yet DFA does not say which category of "agency action" in 5 U.S.C. § 551(13) applies to OPM's memorandum or CDC's and FDA's maintenance of their websites. Nor does one obviously fit, as case law confirms. *See Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Def.*, 990 F.3d 834, 841 (4th Cir. 2021) (holding that agency's maintenance of a website was not "agency action" reviewable under the APA); *Ass'n of Admin. L. Judges v. U.S. OPM*, 640 F. Supp. 2d 66, 73 (D.D.C. 2009) (finding that "OPM's memo to agencies" was "not part of a rule, order, sanction or relief"). Without a predicate "agency action," DFA is unlikely to succeed on its APA claims.

DFA further fails to show the challenged conduct rises to the level of *final* agency action. A final agency action "mark[s] the consummation of the agency's decisionmaking process" and is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks omitted). Agency action "must satisfy *both* prongs of the *Bennett* test to be considered final." *Sw. Airlines Co. v. U.S. Dep't of Transp.*, 832 F.3d 270, 275 (D.C. Cir. 2016) (emphasis added).

DFA does not explain what decisionmaking processes concluded at OPM, CDC, and FDA. The OPM memorandum, on its face, contemplates an ongoing dialogue between OPM and agency heads about steps they "should take" to comply with Executive Order 14168. *See Ass'n of Admin. L. Judges*, 640 F. Supp. 2d at 73 (OPM memo to agency heads "did not mark the consummation of a decision-making process"). Likewise, DFA does not show the removal of certain CDC and FDA webpages reflected

11

a final decision, rather than a temporary measure. Indeed, a declaration offered by DFA admits that "some of this information may have been re-posted." ECF No. 8-1, at ¶ 5.

DFA also is conspicuously silent about what legal rights or obligations were determined as a result of the challenged events. OPM's guidance to agency heads did not fix any rights or obligations; nor does DFA identify any legal consequences that stem from the guidance. *See Ass'n of Admin. L. Judges*, 640 F. Supp. 2d at 73 (OPM memo to agency heads "did not determine the rights or obligations of any person or entity; and no legal consequences flowed from it"). Similarly, CDC's and FDA's removal of web content "was not a *determination* of rights and obligations that would amount to final agency action"; "[i]t was instead a decision in furtherance of ongoing website management." *Nat'l Veterans Legal Servs. Program*, 990 F.3d at 841. For example, the two FDA webpages DFA cites contained *draft* guidance. There is no plausible argument that the removal of draft guidance determined any rights or obligations. At bottom, there is no final agency action present here, so DFA is unlikely to succeed on any claim.

### III. The balance of equities and public interest do not support emergency relief

Finally, a brief word about the "harm to the opposing party" (here, the agencies themselves) and "the public interest." *Nken*, 556 U.S. at 435. Relief for DFA now could leave the agencies unable to comply with Executive Order 14168, which DFA does not challenge. A potential impingement upon the President's Article II authority over the operations of the Executive Branch is always grounds for caution. *See Winter*, 555 U.S. at 24 ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.") (quotation omitted). And the public availability of the subject information from alternative sources further commends avoidance of this constitutional concern.

**CONCLUSION**

For the foregoing reasons, the Court should deny DFA's motion for a temporary restraining order.

February 9, 2025

Respectfully submitted,

/s/ James W. Harlow
JAMES W. HARLOW
Senior Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
PO Box 386
Washington, DC  20044-0386
(202) 514-6786
(202) 514-8742 (fax)
james.w.harlow@usdoj.gov